IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHAEL WILLIAM EBERLY etc.,

                Plaintiff,        Case No. 3:06 CV 1487

-vs-

                                  MEMORANDUM OPINION

OPTIMUM NUTRITION, INC., et al.,

                Defendant.

KATZ, J.

This matter is before the Court on two separate motions to dismiss (Doc. 49, 57-58). For the reasons enumerated below, defendants Optimum and ABBP's motion to dismiss is hereby granted in part (with regard to counts 3, 4, 5, 6, and 9), and denied in part (with regard to count 2) (Doc. 49). Defendant Schiff's motion to dismiss is hereby granted (Doc. 57-58). This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

**I. Background**

On December 5, 1994, Plaintiff Michael William Eberly d/b/a American Body Builders, Inc. (sometimes referred to as American Body Building Products of Ohio) ("Plaintiff") entered into a distribution agreement with defendant American Body Building Products, Inc. (sometimes referred to as American Body Building) ("ABBP"), which was owned by James Horn. The parties signed the agreement seeking to make Plaintiff the exclusive distributor for ABBP's products in Ohio. The following year, Horn sold ABBP to defendant Weider Nutrition Group, Inc. ("Weider"), which is now known as Schiff Nutrition Group ("Schiff"). In 2002, Schiff sold all its rights and interests in ABBP to defendant Optimum Nutrition, Inc. ("Optimum").

Plaintiff filed suit on June 16, 2006 against ABBP and Optimum. Compl., Doc. 1. On March 15, 2007, Plaintiff amended his complaint to include Weider/Schiff. First Am. Compl., Doc. 43.

The complaint alleges nine separate counts against the various defendants:

1) breach of contract against all defendants;
2) violation of Florida trade practices law against Optimum and ABBP;
3) breach of covenant of good faith and fair dealing against all defendants;
4) fraud against Optimum and ABBP;
5) negligent misrepresentation against Optimum and ABBP;
6) tortious interference with business relationship against Optimum and ABBP;
7) declaratory relief against all defendants;
8) injunctive relief against Optimum and ABBP; and
9) specific performance against Optimum and ABBP.

*Id.*

Defendants Optimum and ABBP filed a motion to dismiss counts 2, 3, 4, 5, 6, and 9. Doc. 49. Defendant Weider filed a motion to dismiss all claims. Doc. 57-58. The distribution agreement contains a choice of law provision that specifies that it "shall be governed by and construed in accordance with" Florida law. Distribution Agreement at 10, ¶23. *See Schulke Radio Prod., Ltd. v. Midwestern Broad. Co.*, 6 Ohio St. 3d 436, 438 (Ohio 1983) ("The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement" unless the state chosen by the parties "has no substantial relationship to the parties or the transaction and there is no reasonable basis" for the parties' choice.), *citing* Restatement (Second) of Law § 187 (1971).

## II. Standard of Review

No complaint shall be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*,

2

355 U.S. 41, 45, (1957); *see also Pfennig v. Household Credit Servs.*, 295 F.3d 522, 525-26 (6th Cir.2002) (citing *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir.1998)). When deciding a motion brought pursuant to Fed.R.Civ.P. 12(b)(6), the inquiry is essentially limited to the content of the complaint, although matters of public record, orders, items appearing in the record, and attached exhibits also may be taken into account. *Yanacos v. Lake County*, 953 F.Supp. 187, 191 (N.D.Ohio 1996). The Court's task is to determine not whether the complaining party will prevail on its claims, but whether it is entitled to offer evidence in support of those claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The Court must accept all the allegations stated in the complaint as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73, 81 (1984), while viewing the complaint in the light most favorable to the plaintiff. *Scheuer*, 416 U.S. at 236. A court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

**III. Discussion**

    **A. Claims against Optimum and ABBP**

        **1. Count 2: Florida Deceptive and Unfair Trade Practices Act**

The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.204, prohibits, and § 501.211 provides a remedy for, "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce. . . ." Fla. Stat. § 501.204. The law allows any "person who has suffered a loss as a result of a violation of this part [to] recover actual damages, plus attorney's fees and court costs." Fla. Stat. § 501.211(B).

3

Defendants Optimum and ABBP allege that Plaintiff lacks standing under the FDUTPA. The Florida legislature amended the standing requirement of "consumer" in 1993, making it broader in scope. As of the 1993 change, many business and commercial entities that were not included in the pre-1993 act became eligible plaintiffs. *Beacon Property Management, Inc. v. PNR, Inc.*, 890 So.2d 274, 277 (Fla. Dist. Ct. App. 2004). In 2001, the legislature amended the act, changing "consumer" to "person" and broadening the definition further. *R. Miller Architecture, Inc. v. Edgington Enterprises, Inc.*, 2007 WL 496614 at *6 (M.D. Fla. 2007).

The defendants rely on case law decided *prior to* the 2001 amendment, and argue that Plaintiff is not a "consumer" under the act. However, the act provides a cause of action for "person[s]" after 2001, not "consumer[s]." The term "person" is broad enough to encompass a company engaged in a routine commercial transaction where that company is acting as a consumer within the specific transition at issue. In the transaction underlying this case, Plaintiff was the consumer of the vitamin supplement products being sold by Optimum and ABBP, even though Plaintiff would later sell those products to other consumers. He therefore has standing to sue under the FDUTPA.

### 2. Count 3: breach of implied covenant of good faith and fair dealing

"It is well settled that Florida law recognizes an implied covenant of good faith and fair dealing which attaches to the performance of each specific contractual obligation. . . . This is part of Florida's contract law, not an independent tort." *Kraft Co., Inc. v. J & H Marsh & McLennan of Florida, Inc.*, 2006 WL 1876995 at *3 (M.D. Fla. 2006) (*citing Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1291 (11th Cir. 2001)). An action for breach of covenant of good faith and fair dealing cannot be maintained in the absence of a breach of an express contractual

4

provision. *Avatar Dec. Corp. v. DePani Constr., Inc.*, 834 So. 2d 873, 876 (Fla. Dist. Ct. App. 2002). At least one Florida court has also held that

> a party can maintain a claim for breach of the implied duty only if it is based on allegations different than those underlying the accompanying breach of contract claim. If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated.

*Shibata v. Lim*, 2000 U.S. Dist. LEXIS 20053 at *19-20 (M.D. Fla. 2000).

The language of Plaintiff's amended complaint limits this Court's inquiry into the breach of good faith claim against Optimum and ABBP. Every paragraph of count 3, from 66-72, makes explicit reference to the "contract" or "distribution agreement." Doc. 43, ¶¶ 66-72. At no point does Plaintiff distinguish his claim in count 3 from his claim for breach of contract, as against Optimum and ABBP. While Florida law requires the presence of a breach of contract to support a claim for breach of good faith and fair dealing, it also appears to require allegations that go beyond the allegations that give rise to the breach of contract claim. Applying Florida law, count 3 is redundant and superfluous, and as such it must be dismissed.

### 3. Counts 4, 5, and 6: related tort claims

Defendants Optimum and ABBP move to dismiss counts 4-6 on the basis that they are tort claims arising out of a contract and are therefore not legally cognizable.

> [I]t is no tort to breach a contract, regardless of motive. A tort exists only if a party breaches a duty which he owes to another independently of the contract, that is, a duty which would exist even if no contract existed. However, when the promisee's injury consists merely of the loss of his bargain, no tort claim arises because the duty of the promisor to fulfill the term of the bargain arises only from the contract. The tort liability of parties to a contract arises from the breach of some positive legal duty imposed by law because of the relationship of the parties, rather than from a mere omission to perform a contract obligation.

5

*Battista v. Lebanon Trotting Ass'n*, 538 F.2d 111, 117 (6th Cir. 1976) (citations omitted). No cause of action will exist for torts arising out of contracts, although torts that arise independent from the contractual breach will lie, even in the presence of a breach of contract claim. *Indemnity Ins. Co. of North America v. American Aviation, Inc.*, 891 So.2d 532, 537 (Fla. 2004).

This Court will examine the complaint, as it must when considering a motion to dismiss as describe above, and decide whether claims 4-6 arise independently of any contractual duties between the parties.

Count 4 alleges fraud against Optimum and ABBP. Its claim is rooted in statements made by the defendants to the Plaintiff with regard to the enforcement of the distribution agreement. It is therefore not a claim independent of the contractual breach and must be dismissed. Doc. 43 at 13, ¶ 75. Count 5 alleges negligent misrepresentation against Optimum and ABBP. Again, this claim is couched in statements allegedly made by the defendants with regard to the continued enforcement of the distribution agreement subsequent to the adoption of the contract by Optimum. The claim is intertwined with the breach of contract claim. Doc. 43 at 13-14, ¶ 79. Count 6 alleges tortious interference with a business relationship against Optimum and ABBP. The alleged interference is alleged to have been tortious because defendants had knowledge of Plaintiff's business relationships "[b]y virtue of the supplier/distributer relationship between" Plaintiff and the defendants. That relationship is based entirely on the distribution agreement, and therefore the alleged tort is intertwined with the breach of contract claim. Doc. 43 at 14-15, ¶ 87.

None of these claims alleges the existence of a duty aside from the duty imposed by the distribution agreement contract. Counts 4, 5, and 6, on the face of the complaint, are not claims independent of the breach of contract claim, count 1, and therefore counts 4-6 must be dismissed.

### 4. Count 9: specific performance

Defendants Optimum and ABBP argue that Plaintiff's claim for specific performance is time-barred by the statute of limitations for a claim seeking specific performance of a contract. Under Florida law, an action for specific performance of a contract must be commenced within one year of the breach of contract. Fla. Stat. § 95.11(5)(a); *see also* Ohio Rev. Code § 2305.03(B) ("No civil action that is based upon a cause of action that accrued in any other state, territory, district, or foreign jurisdiction may be commenced and maintained in this state if the period of limitation that applies to that action under the laws of that other state, territory, district, or foreign jurisdiction has expired or the period of limitation that applies to that action under the laws of this state has expired.").

Optimum and ABBP argue that the alleged breach occurred in 2003, and this lawsuit was not filed until 2006; therefore the statute of limitations has run. Plaintiff argues that the contractual breach began in 2003 and continued until the time of the filing of this action, and therefore the statute of limitations has not run.

"The statute of limitations begins to run against a contract from the time a cause of action accrues on it." *Special Tax School Dist. No. 1 of Orange County v. Hillman*, 131 Fla. 725, 738, 179 So. 805, 810 (Fla. 1938); *see also Klein v. Frank*, 534 F.2d 1104, 1107 n.11 (5th Cir. 1976), and *Loewer v. New York Life Ins. Co.*, 773 F.Supp. 1518, 1522 (M.D. Fla. 1991). Plaintiff admits that the alleged breach of contract in this case began in 2003. At that point, the cause of action for breach of contract accrued, because Plaintiff could have brought a suit for specific performance within a year of that breach. The statute of limitations began to run in 2003. In the absence of any tolling argument by Plaintiff or any guidance about tolling specific performance actions by the

7

Florida legislature or courts, this Court takes § 95.11(5)(a), enhanced by the principal of accrual as cited herein, at its word: any action for specific performance must be brought "[w]ithin one year" of the alleged breach of a contract. That cause of action having accrued in 2003, and this complaint having been filed in 2006, the statute of limitations on Plaintiff's specific performance claim has run. The defendants' motion to dismiss count 9 is granted.

**B. Claims against Schiff**

Plaintiff makes three claims against Schiff: 1) breach of contract, 2) breach of covenant of good faith and fair dealing, and 3) declaratory judgment. To establish a breach of contract, Plaintiff must prove the existence of a contract, a material breach of that contract, and resultant damages from that breach. *Knowles v. C.I.T. Corp.*, 346 So. 2d 1042, 1043 (Fla. Dist. Ct. App. 1977).

Plaintiff's claims against Weider/Schiff largely stem from Schiff's alleged failure to inform Optimum, upon transfer of ABBP from Schiff to Optimum, of the continuing obligations imposed by the distribution agreement with Plaintiff. In his defense, Plaintiff repeatedly cites language from the distribution agreement, which was in effect between Plaintiff and Weider until July 26, 2002, that says: "The supplier [Weider] will make every legal and moral effort to insure that the distributor [Plaintiff] continues to be the sole local source of supply of the 'products' to the 'customers' and that [Plaintiff] prospers and grows within his 'territory.'" Distribution Agreement at 3, § 3.2. Plaintiff argues that this "legal and moral effort" necessitated a duty to inform Schiff's successor in interest to the contract, Optimum and ABBP, of the continuing obligation to honor the distribution agreement, and that by failing to so inform its successors, Schiff breached the contract.

8

The Court, in dismissing Plaintiff's claims against Schiff, finds it sufficient to note two key facts: first, there is no language in the distribution agreement that required Weider/Schiff to notify successors in interest to the contract that the contract would continue to apply. Any successors in interest are just that – they remain bound to a contract and must enforce it because it remains in force when the rights and interests of one party are assigned to or acquired by another. Second, even if there were a question of notice here, Plaintiff admits that Optimum, *after* acquiring Schiff's rights and interests in ABBP and its products and contracts, contacted him (Plaintiff) and informed him that the new company would be the distributor of the products and would maintain the exclusivity terms of the distribution agreement. Doc. 43 at 6, ¶¶ 34-35. Plaintiff does not allege a breach of the distribution agreement by Optimum and ABBP until 2003, *after* Optimum had acquired all rights to and interests in the distribution agreement. Therefore, not only is Plaintiff's claim not supported by the language of the distribution agreement, but also by Plaintiff's own account, that which he complains of against Schiff (the failure to inform Optimum of the contract) is rendered moot with regard to any breach by Optimum because Optimum knew of the contract and agreed to honor it *after* the transfer of ABBP from Schiff to Optimum. Schiff neither breached the contract nor played any part in the alleged breach by Optimum and ABBP.

Plaintiff's breach of contract claim against Schiff is hereby dismissed. Plaintiff's breach of covenant of good faith and fair dealing and declaratory judgment claims are premised on the existence of a breach of the distribution agreement by Schiff. Pl.'s Br., Doc. 67 at 7-11. All claims against Schiff are hereby dismissed.

**IV. Conclusion**

For the reasons enumerated herein, defendants Optimum and ABBP's motion to dismiss is hereby granted in part (with regard to counts 3, 4, 5, 6, and 9), and denied in part (with regard to count 2) (Doc. 49). Defendant Schiff's motion to dismiss is hereby granted (Doc. 57-58).

IT IS SO ORDERED.

                                           s/ *David A. Katz*
                                           DAVID A. KATZ
                                           U. S. DISTRICT JUDGE